941 A.2d 616 (2008)
398 N.J. Super. 220
CIRCUS LIQUORS, INC., Petitioner-Respondent,
v.
GOVERNING BODY OF MIDDLETOWN TOWNSHIP, Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued telephonically October 31, 2007.
Decided February 27, 2008.
*617 Bernard M. Reilly, Red Bank, argued the cause for appellant (Dowd & Reilly, attorneys; Mr. Reilly, on the brief).
Larry S. Loigman Middletown, argued the cause for respondent Circus Liquors, Inc.
Richard D. Nasca, Deputy Attorney General, argued the cause for respondent Division of Alcoholic Beverage Control (Anne Milgram, Attorney General, attorney: Lorinda Lasus, Deputy Attorney General, of counsel; Mr. Nasca, on the brief).
Before Judges STERN, A.A. RODRÍGUEZ[1] and C.S. FISHER.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we consider whether the Director of the Division of Alcoholic Beverage Control was authorized to allow the holders of a third liquor licensepossessed in violation of the two-license limitation contained in N.J.S.A. 33:1-12.31to retain the third license long enough to transfer it. We conclude that, in the circumstances presented, the Director mistakenly failed to immediately discontinue the license holders' unlawful conduct and, therefore, reverse.
Certain facts are undisputed. In 2005, the Township Committee of the Township of Middletown, acting as the local Alcoholic Beverage Control Board (Middletown), considered applications for the annual renewal of three liquor licenses: XXXX-XX-XXX-XXX and XXXX-XX-XXX-XXX, which were held by Circus Liquors, Inc. (Circus), and XXXX-XX-XXX-XXX, which was held by Food Circus Supermarkets of Middletown, Inc. (Food Circus). The stockholders of Circus and Food Circus were identical.
N.J.S.A. 33:1-12.31 prohibits any person from "acquir[ing] a beneficial interest in more than a total of two alcoholic beverage retail licenses." Notwithstanding that ownership by Circus and Food Circus of *618 the three liquor licenses violated this statutory prohibition, Middletown renewed all three licenses from 1998, the time of Circus's acquisition of XXXX-XX-XXX-XXX (the third license), through 2004.
As a result, Circus filed a verified petition seeking relief from the Director. Acknowledging that it and Food Circus could not lawfully own the three liquor licenses simultaneously, Circus nevertheless sought a stay of the denial of renewal in order to allow the third license to be transferred to some other unrelated person. The matter was transferred to the Office of Administrative Law and assigned to an administrative law judge (All).
The ALJ observed that the facts he deemed relevant were not in dispute and granted Middletown's motion for a summary decision. He concluded that Circus had no right to the third license, and that the estoppel theory offered as a means of alleviating the consequences of that illegality was without merit. In rejecting this equitable estoppel theory, the ALJ correctly recognized that a party seeking its application is required to show that it has relied "with good reason and in good faith" on the other's conduct. Summer Cottagers Assoc. v. City of Cape May, 19 N.J. 493, 503-04, 117 A.2d 585 (1955). The ALJ concluded that there could be no reasonable reliance upon the prior renewals of the third license because there could be no reasonable expectation that Middletown would continue to permit this violation of N.J.S.A. 33:1-12.31, regardless of the allegation that Middletown had apparently overlooked, or chosen not to observe, repeated violations of this statute since 1998.
Exceptions were filed, and the Director issued a written decision on November 21, 2006, in which he agreed with the ALJ's conclusion that:
The renewal of the license here at issue, as requested at the time by [Circus], would have "facilitated the violation of State law. The decision of the local licensing body to deny renewal in the face of such facts cannot be considered arbitrary or unreasonable or by any stretch of the imagination an abuse of discretion.
We agree with this analysis as well. Although inexplicably slow to realize or acknowledge the continuing breach of the statutory prohibition,[2] Middletown's denial of the application for renewal of the third license was mandated by N.J.S.A. 33:1-12.31, as the Director correctly held. See Grand Union Co. v. Sills, 43 N.J. 390, *619 404, 204 A.2d 853 (1964) (holding the two-license limitation constitutional).
The Director also rejected Circus's estoppel theory, correctly holding that equitable estoppel may be invoked against a governmental entity but only in exceptional circumstances:
Courts are generally reluctant to apply estoppel theories against governmental agencies.
As the court said in Keenan v. Essex Cty. Freeholders Bd., 106 N.J.Super. 312, 316, 255 A.2d 786 (App.Div.1969), "[a] governmental body cannot ordinarily be estopped by prior acts that were in violation of law." Where the act in question is utterly beyond the jurisdiction of a public entity and is ultra vires, the doctrine of estoppel in the interest of equity and essential justice has no direct application.
[Cipriano v. Dep't of Civil Serv., 151 N.J.Super. 86, 91, 376 A.2d 571 (App. Div.1977) (some citations omitted).]
This approach has remained unchanged. See Middletown Twp. Policemen's Benevolent Assoc. v. Twp. of Middletown, 162 N.J. 361, 367-68, 744 A.2d 649 (2000). Circus could not, with reason and in good faith, assume that Middletown would continue to permit the unlawful renewals of the third license. See, e.g., In re Estate of Shinn, 394 N.J.Super. 55, 69-70, 925 A.2d 88 (App.Div.), certif. denied, 192 N.J. 595, 934 A.2d 637 (2007). The Director's holding in this regard was legally sound.
Based upon those determinations, the Director concluded there was no lawful impediment to Middletown's denial of Circus's application to renew the third license. The Director, however, found it appropriate to "facilitate an orderly transition for both the municipality and the licensee while still ensuring compliance with Title 33. . . ." As a result, he ordered a stay of the denial of renewal to permit Circus "to fully divest itself of any and all legal and beneficial interest in the license by selling the license to an unrelated bona fide third party in an appropriate arms-length transaction." The Director also ordered that, during the stay period, the third license would be "indefinitely suspended" and barred its use by Circus. In support of his authority to issue such a remedy, the Director relied exclusively on an unpublished opinion issued by this court in 1981,[3] and *620 on Bulletin 2478, which the Director issued in 1998.
The Director's stay of the denial of renewal lies at the heart of this appeal. Circus and the Attorney General contend that we should defer to the Director's decision to craft such a remedy; Middletow argues that any delay in the operative effect of non-renewal perpetuates the license holders' continued violation of N.J.S.A. 33:1-12.31.
We agree with Middletown that the Director's delay of non-renewal is not consistent with the purposes of Title 33 and cannot stand. See Grand Union Co., supra, 43 N.J. at 402-04, 204 A.2d 853 (explaining at length the history behind and the rationale underlying the two-license limitation). By issuing this relief, the Director mistakenly created a circumstance by which the license holders here could continue to profit from their unlawful conduct.
In support of his determination to provide Circus with the opportunity to sell the third license, the Director relied upon the Legislature's expression of a liberal intent and its declaration that Title 33 is remedial in nature. N.J.S.A. 33:1-73. However, the Legislature there declared that Title 33 was intended to be "remedial of abuses inherent in liquor traffic" and, in that regard, should its further statement that Title 33 "shall be liberally construed" be understood. Ibid. (emphasis added). One of those abuses referred to in N.J.S.A. 33:1-73 is ownership of more than two liquor licenses, as N.J.S.A. 33:1-12.31 makes abundantly clear. See Grand Union, supra, 43 N.J. at 402-04, 204 A.2d 853. Although we need not presently question the Director's authority to briefly permit ownership of a third license in the circumstances described in the Director's 1998 bulletin, invocation here of the liberality described in N.J.S.A. 33:1-73 mistakenly formed the basis for a perpetuation of the very abuse that N.J.S.A. 33:1-12.31 was intended to preclude. A seven-year ownership of a third license is not a mere technical violation, but rather, a long-term, persistent violation of one of the chief evils the Legislature intended to prohibit.
In asserting his power to permit ownership of more than two liquor licenses, the Director referred to Bulletin 2478 and indicated it was permissible for a person to obtain a third liquor license so long as it was acquired to replace one of his or her other two licenses.[4] If Bulletin 2478 correctly describes an instance in which the Director may permit brief ownership of a third licensea question we need not decidethat power was inapplicable here. Circus obtained the third license apparently without declaring an intent to transfer one of its other licenses, which would then *621 be replaced by the third. Instead, the license holders here retained all three licenses for seven years and sought to continue to perpetuate this situation when renewal was finally denied in 2005. We conclude that the license holders were not in technical violation, as was the license holder in Bulletin 2478, but were, instead, engaged in a stark and lengthy violation of N.J.S.A. 33:1-12.31. Because the remedy crafted by the Director serves no purpose other than to allow the license holders here to profit from their admitted wrongful conduct, we reverse that part of his decision.
We turn to one final matter that we sua sponte raised after hearing oral argument. The Director suggested in his final decision that both Middletown and Circus acted wrongfully with regard to the third license when he stated that "the municipality did not have the statutory authority to grant a license in violation of N.J.S.A. 33:1-12.31, nor did the licensee have the right to accept a third license under these conditions." That Middletown could reap a benefit from this asserted wrongful conduct was suggested by the Attorney General's belief as to what might follow if, the Director's decision to delay non-renewal and permit Circus the opportunity to transfer the third license is not upheld:
"If the license is not renewed, Middletown will be able to issue and sell a new license to the highest bidder, because Middletown is below the population cap on retail distribution licenses. It appears that Middletown intends to take such action, since it has never asserted that it has too many licenses.
[Emphasis added.]
In light of this contention about the pecuniary benefit Middletown may obtain from a favorable ruling, we asked the parties to provide supplemental briefs addressing whether we should "remand the matter to the Director to determine whether Middletown was complicit and, if so, [whether] the Director [could] also sanction or discipline Middletown in some manner for its alleged conduct in permitting the alleged violation of the two license limitation contained in N.J.S.A. 33:1-12.31." In its supplemental brief, the Attorney General bluntly acknowledged that Title 33 does not imbue the Director with "the authority to sanction or discipline a municipality."
We have long deferred to the Director's expertise in his vindication of Title 33's requirements and limitations on the liquor industry. See Div. of Alcoholic Beverage Control v. Maynards, Inc., 192 N.J. 158, 183-84, 927 A.2d 525 (2007); R & R Marketing, L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175-76, 729 A.2d 1 (1999). We have also held that "[a]lthough an agency's interpretation of the statute it administers is not binding upon us, the agency's interpretation is entitled to `substantial deference' `provided it is not plainly, unreasonable.'" Smith v. State, Dep't of Treasury, 390 N.J.Super. 209, 216-17, 915 A.2d 48 (App.Div.2007). On its face, N.J.S.A. 33:1-3 broadly empowers the Director to enforce Title 33 but it is silent on the issue we have posed and, in light of the Director's concession as to the limits of his authority, which has not been persuasively challenged by Circus,[5] we need not further consider whether the Director is authorized to sanction or impose limits on a municipality that may have been complicit in a license holder's violation of N.J.S.A. *622 33:1-12.31.[6] Instead, we will presently defer to the Director's interpretation.
To summarize, we affirm the Director's determination insofar as it concluded that Circus held a third liquor license in violation of N.J.S.A. 33:1-12.31 and insofar as it rejected the estoppel theory offered as a basis for continued ownership of the third license, or in mitigation. However, we reverse that part of the final agency decision that permitted a delay of non-renewal.
Affirmed in part, reversed in part. We do not retain jurisdiction.
NOTES
[1] Judge Rodriguez did not participate in oral argument, but has participated in the decision with the consent of counsel.
[2] Circus argues in its appeal brief that Middletown permitted the unlawful renewal of all three licenses from 1998 through 2004 for political reasons:

[T]he governing body (acting on the advice of its attorney, Bernard M. Reilly, Esq.) expressly approved each license in the years 1999, 2000, 2001, 2002, 2003 and 2004.
Middletown claims that it "discovered" the violation in June 2005, Actually, Middletown's "discovery" resulted from a political falling-out. Joseph Azzolina, a principal in Circus, was a member of the New Jersey General Assembly; at or about the time of this license renewal, he publicly opposed the reappointment of William F. Dowd (Mr. Reilly's law partner), as county Republican chairman. During the period when Azzolina and Dowd were political allies, the Township assured Circus that its license applications were in proper form. Once Dowd was ousted from his political post, Reilly renounced his earlier advice, and prepared the Township Committee's harsh resolution denying the license renewal. Thus, although cloaked in the rubric of the "public interest," the Township Committee has used that argument to mask its actual motivation, a petty, partisan feud.
These allegations are not in the record other than through the argument of counsel. However, Circus never had the opportunity to present this evidence since the All granted Middletown's motion for a summary decision.
[3] This unpublished decision contains no information regarding the circumstances that prompted the court's authorization of a holder's brief possession of a third liquor license. The entirety of that decision, brief enough to be quoted here, is as follows:

A review of the entire record satisfies us that the findings and conclusions of the Director are supported by adequate evidence in the record, and so are hereby sustained.
In our view, however, the order of the Director mandating the divestiture by [the license holder] of his complete legal and beneficial interest in this license, should be modified by directing that [he] shall fully divest himself of any and all legal and beneficial interest in and to any of the three plenary retail distribution licenses presently held by him, including but not limited to the instant license, within 120 days from the date of this decision (or within such further time as may be granted by the Director); and that upon proof being presented to the Director within said period confirming such divestiture and transfer of one of such licenses (other than the license involved in this proceeding), the suspension of the operation of the license involved in this proceeding shall be terminated forthwith.
As so modified, the determination of the Director is affirmed.
[Million Bucks, Inc. v. Division of Alcoholic Beverage Control, Docket No. A-2096-80T3 (June 10, 1981).]
Pursuant to R. 1:36-3, the Attorney General has advised us that she is not aware of any other relevant or adverse unpublished opinions on this subject.
[4] In Bulletin 2478, which was issued on February 5, 1998, the Director considered whether the holder of both a retail consumption license in Old Bridge and a plenary retail consumption license with broad package privilege in Franklin could at the same time acquire a plenary retail distribution license in Old Bridge to replace the plenary retail consumption license then held in Old Bridge. The Director stated in this bulletin that because the owner "intend[ed] to acquire a type of license more suitable for his business enterprise and to quickly sell the license that it currently holds," there would be no violation of N.J.S.A. 33:1-12.31 so long as the consumption license in Old Bridge was placed in inactive status once the distribution license was acquired. In addition, the Director then stated in this bulletin that "to prevent even the appearance of speculating on the acquisition of multiple licenses for profit purposes or stifling competition, the inactive retail consumption license shall be subject to the condition that it must be sold to an unrelated bona fide third party or activated at a qualifying premises within one year of the date of activation of the distribution license."
[5] In its supplemental brief, Circus acknowledged that "no statute authorizes a sanction" for Middletown's alleged misconduct, and argued only, without citation, that "it would be inequitable to reward the municipality, or to allow it to use the vehicle of a liquor license renewal as a sword to punish a political opponent."
[6] Although Circus argues that the facts demonstrate Middletown's complicity, we hasten to add that we are in no position to opine on that question because there has never been an analysis of those allegations at the agency level. Now that the Director has determined there is no available remedy even if Middletown was complicit, we need not further consider the factual events that resulted in the seven-year renewal of this unlawful liquor license, nor will we remand for the development of those facts by the ALJ or Director despite our concerns about Circus's allegations.